Sharon **CAPPILLINO**, individually and as Parent and Natural Guardian of Peter Cappillino, and Peter Cappillino, Plaintiffs,

v.

**HYDE PARK CENTRAL SCHOOL DISTRICT, et al., Defendants.**

No. 95 Civ. 1665(CM).

United States District Court, S.D. New York.

March 26, 1999.

Ben M. Arai, Law Office: Ben Arai, New York City, NY, for plaintiffs.

Neal H. Rosenberg, New York City, NY, for defendant.

MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR MONEY DAMAGES

McMAHON, District Judge.

In this action Sharon Cappillino, suing individually and as the natural guardian

for her now-grown son, Peter, alleges that the Defendant Hyde Park Central School District and various State and local officials violated "various Federal Statutes including, but not limited to, the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq.," by graduating Peter from high school prior to the performance of certain evaluation and testing and without consideration of the findings and recommendations of that non-existent testing. (Complaint, ¶ 1.) The Complaint further alleges as follows: "Plaintiffs also claim that the Defendants, acting under color of State law, violated certain procedural due process guarantees as provided by the Education of the Handicapped Act by graduating Plaintiff Peter Cappillino, during the pendency of this and a related proceeding. Furthermore, the Plaintiffs seek review of the decision of Defendant Frank Munoz, State Review Officer, dated November 10, 1994, which ruled that the Defendants' Individualized Education Plan for Plaintiff Peter Cappillino for the 1992–1993 school year was adequate and further ruled that Plaintiff Peter Cappillino was not entitled to compensatory education." (Complaint, ¶ 1.) The only statutory sections invoked in the Complaint are 20 U.S.C. § 1415, which purportedly was violated in its own right, and 42 U.S.C. §§ 1983 and 1988, which are the basis for a constitutional claim under the Fourteenth Amendment. (See Complaint, ¶ 11.) In a prior opinion of the United States Court of Appeals for the Second Circuit in this matter, decided January 30, 1998, Chief Judge Winter described the case as having been "brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et

seq. and 42 U.S.C. § 1983." Cappillino v. Hyde Park Cent. Sch. Dist., 135 F.3d 264 (2d Cir.1998). There would thus appear to be no question but that the IDEA and the Civil Rights Act are the "various federal statutes" invoked in the Complaint.

When the parties appeared before me in November 1998, they were eager to enter into a settlement regarding remedial education for Peter (who is now an adult and who has testified that he is desirous of receiving remedial services), but were at loggerheads concerning the availability of money damages, with Mrs. Cappillino insisting that she was entitled to same and the defendants equally insistent that they were unavailable as a matter of law. The Court referred the parties to Hon. Mark D. Fox for further settlement conferences, but offered to resolve the pure question of law following the submission of letter briefs by both sides. The parties agreed to proceed in this fashion, and letter briefs were submitted in December. The Court treats the submissions as a motion by Defendants for summary judgment dismissing the Cappillinos' claims for money damages. The motion is denied.

While the Second Circuit does not appear to have ruled on this precise issue,[1] at least four other Circuit Courts of Appeal have concluded that damages (other than tuition reimbursement) are not available under the IDEA. For example, in Sellers v. School Board of City of Manassas, VA, 141 F.3d 524 (4th Cir.), cert. denied, —— U.S. ——, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998), a student who had been classified as learning disabled only belatedly sought compensatory and punitive damages. The

1. Defendants argue that Praino v. Board of Educ., 112 F.3d 505, 1997 WL 196367 (2d Cir.1997)—a case that is not to be cited for its precedential value—stands for the proposition that money damages are not available under IDEA. While Praino is perhaps not the Second Circuit's clearest opinion, it does not so hold. Rather, it stands for the unremarkable proposition that a party must exhaust administrative remedies before proceeding with claims for damages or other relief in the courts—which, in the context of IDEA, has

been the law in this Circuit since at least Heldman v. Sobol, 962 F.2d 148 (2d Cir. 1992), and was also the law under the Education of the Handicapped Act ("EHA"), IDEA's predecessor. See, e.g., Riley v. Ambach, 668 F.2d 635 (2d Cir.1981).

There is, however, dicta in Mrs. W. v. Tirozzi, 832 F.2d 748, 754–55 (2d Cir.1987), from which one might well conclude that the Second Circuit would favor the availability of damages in a § 1983 action brought under the IDEA.

court upheld the dismissal of the damages claim, stating:

> Compensatory or punitive damages would transform IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors the provision of and, where appropriate, the restoration of educational rights.

*Id.* at 527.

To the same effect, see *Hoekstra v. Independent Sch. Dist. No. 283,* 103 F.3d 624 (8th Cir.1996); *Heidemann v. Rother,* 84 F.3d 1021 (8th Cir.1996); *Charlie F. v. Board of Educ.,* 98 F.3d 989 (7th Cir.1996); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 980 F.2d 382 (6th Cir.1992).

Other Circuits, however, have held that money damages are authorized under the IDEA. In *Board of Educ. v. Diamond,* 808 F.2d 987 (3d Cir.1986), the Third Circuit ruled that, when Congress overruled *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), by adopting amendments to the EHA that expressly permitted actions to be brought pursuant to § 1983 or the Rehabilitation Act, it effectively declared that parents were not precluded as a matter of law from seeking compensatory damages pursuant to the EHA, now superseded by the IDEA. A decade later, in *W.B. v. Matula,* 67 F.3d 484 (3d Cir.1995), the same court held that parents could invoke 42 U.S.C. § 1983 in order to sue for compensatory damages to remedy IDEA violations, because there was no indication in the statute's language or legislative history that Congress intended to overrule the traditional presumption that a statute gives rise to "all appropriate relief." *Id.* at 495. The Third Circuit in *W.B.* did caution that compensatory education beyond a child's age of eligibility, rather than compensatory damages for generalized pain and suffering, might prove a better and more appropriate remedy. *See id.* However, it declined to rule that money damages were unavailable as a matter of law. *Accord Angela L. v. Pasadena Indep. Sch. Dist.,* 918 F.2d 1188, 1193 n. 3 (5th Cir.1990).

■ While there is much to commend the rule adopted in the Fourth, Sixth, Seventh and Eighth Circuits, it appears to me that the Third Circuit has more correctly read both the express language of the 1986 amendment to IDEA and the intent of Congress in passing it. Clearly, Plaintiffs would be entitled to money damages if they had proceeded under § 504, which they had a perfect right to do. It is true that one searches their Complaint in vain for any reference to that statute, but one equally searches § 1415(f) of IDEA in vain for any suggestion that an aggrieved party must invoke the Rehabilitation Act in order to be awarded damages for deprivation of a child's right to an appropriate free public education. This would seem to be particularly true in the case of a young man who has long since graduated from high school and who, if he was in fact deprived of services to which he was entitled (a question not before me), will have struggled for some years in the "real world" while suffering the effects of that deprivation. While the long-term effects of any such deprivation would more properly be addressed by providing Peter with appropriate remedial services, so that he can make his own way in the world in future years, it is entirely possible that his earning capacity since graduation was diminished, and that such diminution may only be remediable via damages (to Peter, not to his mother). To the extent that Peter's mother expended funds to provide him with private services that should have been made available by the school, she of course would have her own damages claim. And to the extent that either Plaintiff can prove other traditional elements of damage recoverable under § 1983, those are also not precluded by statute.

■ I therefore conclude that nothing in the IDEA precludes a claim for damages

under 42 U.S.C. § 1983, and, indeed, that the IDEA expressly contemplates such claims. Defendants' motion for summary judgment dismissing Plaintiffs' claims for compensatory damages is denied.

Plaintiffs' letter brief mentions the availability of punitive damages under § 1983 claims predicated on violations of § 504 of the Rehabilitation Act and seeks to extend that to IDEA claims as well. However, just as there is no claim made against Defendants under § 504, there is also no prayer for punitive damages in the Complaint, and were a motion to amend the Complaint to be made at this late date, the Court would be disinclined to grant it.